Filed 5/15/13  In re R.C. CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **In re R.C., a Person Coming Under the Juvenile Court Law.** | |
| **SAN MATEO COUNTY HUMAN SERVICES AGENCY,** | |
| **Plaintiff and Respondent,** | **A136830** |
| **v.** | |
| **ROBERT C.,** | **(San Mateo County Super. Ct. No. JUV81564)** |
| **Defendant and Appellant.** | |

Robert C. (Father) appeals from an order of the juvenile court terminating his reunification services as to his daughter R.C. (Minor) at the 12-month review hearing. He contends the juvenile court erred:  (1) in finding respondent San Mateo County Human Services Agency (Agency) provided him reasonable services to aid him in overcoming the problems that led to Minor's removal (Welf. & Inst. Code, § 366.21, subd. (e));[1] and (2) in reducing the frequency of visitation.  We reject those contentions and affirm the juvenile court's orders.

BACKGROUND

In June 2011, the Agency filed a section 300 juvenile dependency petition on behalf of Minor, born in June 2001.  A second amended petition was filed in November, alleging jurisdiction under section 300, subdivisions (b) (failure to protect) and

---

[1]  All undesignated section references are to the Welfare and Institutions Code.

(d) (sexual abuse). The petition alleged the police had been to Father's home numerous times due to heated arguments; Father has a history of substance abuse and Minor reported Father molested her after drinking alcohol in the summer of 2010; Father's molestation of Minor included touching her breasts and buttocks over and under her clothing; Minor is unwilling to return to Father's care; and Minor's mother had not provided care for or visited Minor since she was three years old.[2]

The August 2011 jurisdiction/disposition report indicated that Minor had been living with her paternal aunt (Aunt) since August 2010. Aunt reported that, on August 9, 2010, Father called and asked Aunt to pick up Minor because he and his girlfriend were "having issues." Later that month Father had a stroke; Aunt kept physical custody of Minor and enrolled her in school.

According to the August 2011 report, Minor told the Agency that " '[Father] always hit [his girlfriend], pushed her[, and] pulled hair." Minor reported that she did not feel safe with Father and did not want to live with him. In June 2011, Father's girlfriend obtained a temporary restraining order (TRO) against Father based on allegations that he punched her, pulled her hair, hit her in the head with his work boots, and ordered the family dog to bite her. Father's girlfriend stated in her declaration for the TRO that the authorities had been to the house several times due to reports of domestic violence, but she always denied the abuse because she was "in denial and co-dependent" with Father. Subsequently, the girlfriend denied to the Agency the allegations of physical abuse. Father admitted to many heated arguments with his girlfriend but denied physical abuse.

Although Minor did not mention the sex abuse allegations in her statement as reflected in the August 2011 report, she previously reported to Agency social workers that Father had, in the summer of 2010, touched her on her "boobs" and "butt" under her clothes. Father had been drinking. Minor had reported the touching to Father's girlfriend; the girlfriend confirmed to the Agency that Minor had told her about the

---

[2]   The Minor's mother is not a party to this appeal.

abuse. At the time, Father told the girlfriend that he thought it was her rather than Minor in the bed; he denied the allegations to the Agency.

In a November 2011 addendum report, the Agency reported that Minor was thriving in Aunt's care and that Minor's mother had reestablished contact and wanted to build her relationship with Minor. Father had moved to San Francisco; he wanted Minor returned to his care. Twice monthly visits between Father and Minor had gone well, but Minor only felt safe if the visits were supervised. According to a therapist present at the visits, Minor "has fears of pas[t] behaviors, anger[,] and aggression."

On November 3, 2011, the juvenile court sustained the second amended petition, declared Minor a dependent child, and approved the Agency's case plan. Father's case plan required him to complete a domestic violence program, complete a substance abuse assessment and follow treatment recommendations, complete a therapeutic assessment and participate in recommended services such as therapy, participate in random alcohol/drug testing, and abstain from alcohol and drugs.

The May 2012 six-month review report indicated that Minor continued to do well in Aunt's custody. Minor's therapist reported that Minor did not want to live with Father because she does not trust him, and that Minor found it too stressful to visit with Father twice a month and wanted to decrease the frequency to once a month.

The report indicated that Father tested positive for methamphetamines on January 12, 2012, and admitted relapsing into use of alcohol and methamphetamines. He was discharged for lack of compliance by two outpatient drug treatment programs. In May 2012, he had two more positive tests for methamphetamine, as well as a missed test.

On August 1, 2012, the juvenile court found that reasonable services had been provided to the parents and that the parents had made only minimal progress. The court continued reunification services and visitation for both parents.

The Agency reported that, on August 17, 2012, Father was arrested on domestic violence and child endangerment charges after, according to a witness, Father pushed his girlfriend to the ground and drove away with their daughter (Minor's half sister) in his

truck. The girlfriend reported to the police that Father regularly gets intoxicated and that he had been very violent during their relationship.

The Agency's 12-month status report stated that Father was inconsistent in his visitation since May 2012. An addendum to the report stated that, during a visit on August 29, Father behaved inappropriately by discussing with Minor the August 17 domestic violence incident, despite being warned not to by the Agency social worker. According to the Agency, Father cried and tried to convince Minor that the incident was not his fault, and he used Minor "as a source of comfort and consol[ation]." Father missed another visit on September 26.

The Agency recommended termination of Father's reunification services, based on a finding of no substantial probability of return of Minor to Father's care during the statutory timeline. On the other hand, the Agency recommended that the court find a substantial probability of reunification of Minor with her mother. The Agency recommended that visits with Father be reduced in frequency to once every other month.

On October 15, 2012, at the 12-month review hearing, the Agency reported that there was no documentation that Father had completed any of the services to which he was referred, including drug and alcohol treatment, therapy, an anger management and domestic violence program, and parenting education. Father had been referred to a psychiatrist in early 2012, but he stopped attending after a few sessions because he believed the therapist was "against him." On appeal, Father does not contend that he actually completed any of those aspects of his case plan.

At the 12-month review hearing, Father argued that reasonable services had not been provided to him because he was not referred to sexual abuse counseling. Minor's attorney argued that Father's primary issues were domestic violence and substance abuse and, in light of Father's failure to take advantage of the services offered to him, "arguing or finding that social services has dropped the ball here and hasn't referred him to enough services is not appropriate."

The juvenile court followed the Agency's recommendations, including termination of Father's reunification services. The court found by clear and convincing evidence that

4

reasonable services had been provided to Father, but his progress had been minimal. The court found that sexual abuse counseling referrals "would not have been as productive" as the domestic violence and substance abuse programs, which Father failed to complete. The frequency of Father's supervised visitation was reduced to once every other month, with Agency discretion to increase the frequency of visits.

This appeal followed.

DISCUSSION

I. *Reasonable Services*

At issue in this appeal is the Agency's duty to provide reasonable reunification services to parents of minors in dependency proceedings. "To achieve the goal of preserving the family whenever possible, the Legislature required the county child welfare departments to develop and implement family reunification plans and required the courts to monitor those plans through periodic review." (*In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1211.)

"Typically, when a child is removed from a parent, the child and parent are entitled to 12 months of child welfare services to facilitate family reunification. These services may be extended to a maximum of 18 months. (§ 361.5, subd. (a).) If, at the 12-month hearing, [the Agency] does not prove, by clear and convincing evidence, that it has provided reasonable services to the parent, family reunification services must be extended to the end of the 18-month period. (§§ 361.5, subd. (a); 366.21, subd. (g)(1); [citation].)

"The adequacy of reunification plans and the reasonableness of [the Agency's] efforts are judged according to the circumstances of each case. [Citation.] Moreover, [the Agency] must make a good faith effort to develop and implement a family reunification plan. [Citation.] '[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.]

5

"The applicable standard of review is sufficiency of the evidence. [Citation.] ' "If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." ' [Citation.]" (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1345-1346.)

When it appears a parent has not been afforded reasonable reunification services, "the remedy is to extend the reunification period, and order continued services. [Citations.]" (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 973-974.)

Applying these principles, we conclude the Agency offered Father reasonable services. (§ 366.21, subd. (e).) The record supports an inference that the most serious obstacles to reunification were the domestic violence and substance abuse issues. Minor stated that the sexual abuse occurred while Father was intoxicated, she expressed continuing fear of Father's violent tendencies, and there were incidents of domestic violence and substance abuse during the course of the dependency proceeding. Thus, it was not unreasonable for the Agency to focus its referrals on those issues. In particular, if Father had taken advantage of his referral to counseling, his therapist could have advised the Agency on what type of sexual abuse referral would be of most assistance to Father and there would have been an opportunity to make any additional appropriate referrals.[3] Father presents no authority that the Agency was obligated to provide the full range of referrals immediately, rather than adding additional services as Father made progress in the most pressing areas.

"[I]n most cases more services might have been provided and the services provided are often imperfect. [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services

---

[3]  On appeal, Father effectively suggests that the sexual abuse allegations were not the main obstacle to reunification. His brief asserts, "[Minor] reported only a single incident that did not involve 'substantial sexual conduct.' Because [Father's] purported problem was not nearly as serious as is seen in many cases, it should have been easier to correct. Some sex abuse counseling or therapy might have been all that was necessary to help [Father]." That argument supports the view that the Agency acted reasonably in focusing its referrals on the more pressing substance abuse and domestic violence issues.

were reasonable under the circumstances.' [Citation.]" (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 598-599.) "It appears that [Father's] 'real problem was not a lack of services available but a lack of initiative to consistently take advantage of the services that were offered.' [Citation.]" (*Id.* at p. 599.) We conclude substantial evidence supports the juvenile court's finding that the Agency provided reasonable services to Father.

## II. *Visitation*

Father contends the juvenile court abused its discretion (*In re Brittany C.* (2011) 191 Cal.App.4th 1343, 1356) by decreasing the frequency of visitation to once every other month. "We will not disturb the order unless the trial court made an arbitrary, capricious, or patently absurd determination. [Citation.]" (*Ibid.*)

"During reunification efforts, visitation generally must be as frequent as possible, consistent with the well-being of the child. (§ 362.1, subd. (a)(1)(A).) At the same time, visitation orders must provide for 'flexibility in response to the changing needs of the child and to dynamic family circumstances.' [Citation.] 'In addition, the parents' interest in the care, custody and companionship of their children is not to be maintained at the child's expense; the child's input and refusal and the possible adverse consequences if a visit is forced against the child's will are factors to be considered in administering visitation.' (*Ibid.*)" (*In re Brittany C., supra,* 191 Cal.App.4th at p. 1356.)

Father contends the juvenile court's order was unreasonable because the court did not make a finding that more regular visitation would be detrimental to Minor. However, he fails to cite authority that the juvenile court was required to make such a finding where visitation was reduced rather than terminated. (Cf. *In re Brittany C., supra,* 191 Cal.App.4th at p. 1357 ["a court has the power to *suspend* visits when continuing them would be harmful to a child's emotional well-being" (italics added)]; *In re David D.* (1994) 28 Cal.App.4th 941, 954 ["the juvenile court was *required* to permit continued visitation pending the section 366.26 hearing absent a finding visitation would be detrimental to the minors"].)

In any event, the record supports the juvenile court's implied finding that more frequent visitation would be detrimental to Minor. Father behaved inappropriately at the most recent visit and Aunt reported that Minor felt "somewhat troubled" and confused after the visit. Moreover, Father had recently missed scheduled visits, which brought into question his capacity to maintain the visitation schedule. The juvenile court noted that Father had a lot on his mind due to a separate dependency proceeding involving the Minor's half sister. Finally, the court gave the Agency authority to increase visitation when Father is "in that mental place where he can participate meaningfully in those visits" and the court expressed its hope that the reduction in visitation would be temporary. Father has not demonstrated the juvenile court abused its discretion.[4]

## DISPOSITION

The juvenile court's orders are affirmed.

---

SIMONS, J.

We concur.

---

JONES, P.J.

---

NEEDHAM, J.

---

**4** We need not and do not address the Agency's contention that Father forfeited his objection to the juvenile court's visitation order.