[No. B205474. Second Dist., Div. Eight. June 27, 2008.]

AMANDA H., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES et al., Real Parties in Interest.

## COUNSEL

Law Office of Timothy Martella, Eliot Lee Grossman and Renelde Espinoza for Petitioner.

No appearance for Respondent.

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Kirstin J. Andreasen, Deputy County Counsel, for Real Party in Interest Department of Children and Family Services.

## OPINION

EGERTON, J.*—

### INTRODUCTION

Petitioner Amanda H. is the mother of Miguel G., Jr. (age eight), and Federico (Freddy) G. (age seven). Both Miguel and Freddy are dependents of the juvenile court. On January 28, 2008, the juvenile court terminated reunification services and set a permanency planning hearing under Welfare and Institutions Code section 366.26.[1] Mother filed a petition for extraordinary relief under California Rules of Court, rule 8.452. Mother argues that the Los Angeles County Department of Children and Family Services (DCFS) did not prove by clear and convincing evidence that it had provided reasonable services. We agree and grant the petition.

### PROCEDURAL BACKGROUND AND FACTS

Mother and DCFS have set out the complete history of the juvenile court proceedings in their briefs. We need not repeat that history except when necessary to address the specific claims for extraordinary relief.

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further statutory references are to the Welfare and Institutions Code.

The children were detained on November 3, 2006. Both parents submitted to the amended petition at the jurisdiction hearing on December 7, 2006. The sustained petition alleged that, during a violent domestic altercation between the children's father, Miguel, Sr., and mother, she struck him with a mop handle in the children's presence.[2] The petition alleged that both parents had obtained restraining orders against each other, but both continued to have contact with each other, and that mother physically assaulted father's live-in girlfriend and stabbed her in the leg with a screwdriver.

The juvenile court ordered reunification services. Mother's case plan consisted of (1) domestic violence counseling, (2) parent education, and (3) individual counseling addressing anger management and case issues. Mother also was given weekly monitored visits with the children.

For the six-month review hearing in June 2007, the social worker reported mother had not stayed in contact with DCFS. Nonetheless, the social worker stated that mother recently had contacted her, was living with her own mother, and was employed. The social worker reported that mother had enrolled in "[p]arenting classes, [i]ndividual counseling and drug testing and domestic violence counseling, and seem[s] to be committed to regain the custody of her children." Mother was attending her services, and had participated in three parenting sessions and two sessions for "individual counseling and domestic violence counseling."

The social worker even told the juvenile court, "Mother . . . did enroll in the court ordered services and is trying to change and be a good mother figure to her children. If mother continues to participate in the programs she just enrolled [in] there is a possibility for children to return home by the [12-month review hearing]." The social worker recommended that the court extend reunification services. The court did, for another six months.[3]

For the 12-month review hearing, the social worker's December 2007 report said that father apparently was stalking mother and preventing her from visiting the children. Mother's counseling center sent a letter to the social worker in early November 2007 reporting that issues addressed in her counseling included "symptoms of depression, anxiety, [and] self-destructive behavior[], including drug use and abuse." For the continued hearing in January 2008, the social worker reported that, while not attending consistently, mother had attended 13 individual counseling sessions and seven

---

[2] Miguel, Sr., is not a party to this writ proceeding.

[3] In an interim review report dated just eight days after the juvenile court extended services, the social worker again reported that mother was enrolled in "[p]arenting classes, [i]ndividual counseling and drug testing and domestic violence counseling, and seem[s] to be committed to regain the custody of her children," and that she had participated in "individual counseling and domestic violence counseling."

parenting classes. The counseling center indicated mother was not enrolled in a separate domestic violence course, but did discuss domestic violence in her individual counseling sessions. The center's treatment program supervisor reported, "[Mother] is slowly making progress. Initially she was blaming others for her problems but now is gaining some insight about her problems and how to resolve them. She has been learning to protect herself from abuse including calling the police when needed."

The social worker apparently learned for the first time in January 2008 that mother was not enrolled in a separate program of domestic violence counseling, although she was addressing domestic violence issues in her individual therapy sessions. The social worker apparently never had asked the mother's counseling center whether mother was enrolled in a separate domestic violence prevention course. The social worker recommended that the court terminate reunification services on the ground that mother was "not consistent with her participation" in the programs and had not enrolled in separate domestic violence classes.

At the January 29, 2008 hearing, mother testified that she was attending individual counseling and that her sessions addressed domestic violence issues. She recently had learned from the social worker that she needed a domestic violence course, separate and apart from both the parenting classes and the individual counseling. Mother had immediately enrolled in domestic violence counseling and already had attended two sessions. Mother said she had four more parenting classes to go to complete the parenting course. Mother testified that when she signed up for parenting, her "understanding [was] that both things were going to be addressed, the parenting and domestic violence . . . ." Mother's attorney explained, "Mother's counselor at the program where she was doing the parenting classes told her that the parenting classes were the same as the domestic violence classes. And, therefore, mother did not take . . . individual domestic violence classes because she thought she was doing so."

Mother testified that she visited the children once a week, every week, and that the children were happy to see her. Mother said that she very much wanted to reunite with her children. The boys wanted to return to their mother too.

The social worker testified she did not believe mother had adequately addressed anger management and domestic violence issues. The social worker did not explain why she had told both the court and mother that mother was enrolled in all of the necessary classes when in fact that was wrong.

After hearing oral argument—including the children's request that mother's reunification services be extended—the juvenile court terminated services, finding, among other things, that DCFS had provided reasonable reunification services. Mother filed this petition for an extraordinary writ challenging that ruling.

## DISCUSSION

Mother contends the juvenile court erred in terminating reunification services because there is no substantial evidence to support the finding DCFS provided reasonable reunification services. Specifically, mother argues the social worker allowed her to spend almost a year in individual counseling—which included but was not devoted exclusively to domestic violence issues—without telling her or the juvenile court that that counseling did not satisfy the case plan. It was only just before the 12-month hearing, when it was too late for mother to complete the required counseling, that the social worker found out the details of mother's counseling and told mother she needed a separate domestic violence course. We agree that the court should not have terminated reunification services on this record.

### 1. *Controlling Law and Standard of Review.*

Typically, when a child is removed from a parent, the child and parent are entitled to 12 months of child welfare services to facilitate family reunification. These services may be extended to a maximum of 18 months. (§ 361.5, subd. (a).) If, at the 12-month hearing, DCFS does not prove, by clear and convincing evidence, that it has provided reasonable services to the parent, family reunification services must be extended to the end of the 18-month period. (§§ 361.5, subd. (a), 366.21, subd. (g)(1); *Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164 [39 Cal.Rptr.2d 743] ["[c]ourts may not initiate proceedings to terminate parental rights unless they find adequate reunification services were provided to the parents . . ."].)

The adequacy of reunification plans and the reasonableness of DCFS's efforts are judged according to the circumstances of each case. (*Robin V. v. Superior Court, supra*, 33 Cal.App.4th at p. 1164.) Moreover, DCFS must make a good faith effort to develop and implement a family reunification plan. (*Ibid.*) "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . ." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414 [286 Cal.Rptr. 592], italics omitted.)

The applicable standard of review is sufficiency of the evidence. (*Robert L. v. Superior Court* (1996) 45 Cal.App.4th 619, 625–626 [53 Cal.Rptr.2d 41].) " 'If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed.' " (*In re Precious J.* (1996) 42 Cal.App.4th 1463, 1472 [50 Cal.Rptr.2d 385], quoting *In re Misako R.* (1991) 2 Cal.App.4th 538, 545 [3 Cal.Rptr.2d 217].)

## 2. *DCFS Did Not Provide Reasonable Reunification Services.*

In her six-month report, the social worker told the court and the parties that mother had enrolled in "[p]arenting classes, [i]ndividual counseling and drug testing and domestic violence counseling and seem[ed] to be committed to regain the custody of her children." The social worker reported mother had participated in three parenting sessions and two sessions for "individual counseling and domestic violence counseling." In fact, mother had not enrolled in separate domestic violence counseling, but rather in individual counseling that addressed domestic violence along with other issues. Nonetheless, the social worker went so far as to advise mother and the juvenile court that "[i]f mother continues to participate in the programs she just enrolled [in] there is a possibility for children to return home by the [12-month review hearing]."

These statements—when coupled with the fact that nothing was said during the six-month hearing that suggested mother actually was not in compliance because she had not enrolled in a separate program of domestic violence counseling—presumably left mother (and the juvenile court) with the distinct impression that she was enrolled in all the required court-ordered programs. For the next nine months, mother continued in the same services, reasonably justified in her belief that she was attending the correct programs, which partly addressed domestic violence issues. It was only just before the 12-month hearing that the social worker informed mother that she had failed to enroll in a separate course of domestic violence counseling. The social worker then recommended to the juvenile court that services be terminated, in large part because mother had not enrolled in the separate counseling and therefore had not adequately addressed domestic violence issues.

When mother's attorney asked her at the January 2008 hearing whether she "believe[d] that [she] was taking domestic violence classes," counsel for DCFS objected on relevance grounds and the court sustained the objection. Counsel for the children, "after hearing mother's testimony," changed her position, which initially had been "to agree with county counsel." Minors' counsel said, "I think the mother seems to have genuinely misunderstood

what was covered in the individual counseling and it seems as soon as she did realize that the domestic violence program was not covered, she attempted to enroll."[4]

The social worker's conduct in this case not only failed to demonstrate a good faith effort to implement a family reunification plan, but it also may have thwarted mother's ability adequately to address, before the 12-month hearing, the fundamental problem that led to the children's detention: domestic violence. While it was mother's responsibility to attend the programs and address her problems, it was the social worker's job to maintain adequate contact with the service providers and accurately to inform the juvenile court and mother of the sufficiency of the enrolled programs to meet the case plan's requirements. (See *In re Riva M., supra,* 235 Cal.App.3d at p. 414; *Robin V. v. Superior Court, supra,* 33 Cal.App.4th at p. 1164.)

■ The social worker incorrectly informed mother that she had enrolled in all the court-ordered programs and then, at the 12-month mark, told her that she actually was not enrolled in all of the required programs. The social worker then used this lack of enrollment as a basis to recommend that services be terminated. We understand that the social worker was concerned—as was the juvenile court, based on the social worker's reports—that mother's attendance at her parenting classes had been less than stellar and that she had not called the police about father's stalking and attacks, or gone to court for a protective order, until many months after she should have. Mother ultimately may succeed with her case plan or she may not. But DCFS cannot meet the clear and convincing evidence standard when it has told mother and the court for a year that mother was enrolled in the right programs and then, at the 11th hour, used that mistake to ask the court to terminate reunification services. On this record, DCFS failed to demonstrate it had provided mother with reasonable reunification services.[5]

---

[4] According to the record, mother is primarily a Spanish speaker; she required an interpreter's services at the hearings. The record does not reveal how much—if any—of the communications between mother and the social worker took place in Spanish. The record contains a Spanish-language form dated December 15, 2006, referring mother to parenting classes, individual counseling, domestic violence group sessions, and drug tests. (Mother did drug test. At the six-month hearing, the court noted that it never had ordered drug testing, that "there was nothing in the case that suggested that [mother] should do drug testing," and that there was not "enough [of a] basis for it.") The form appears to bear mother's signature. However, as noted, in her June 26, 2007 report, the social worker wrote that mother had "recently enrolled in [p]arenting classes, [i]ndividual counseling and drug testing *and domestic violence counseling* . . . ." At the six-month hearing, the court stated, "Mother has recently enrolled in her programs and needs to complete them."

[5] DCFS argues mother has forfeited her right to challenge the reasonableness of her reunification services because she did not raise this claim at the six-month hearing. We reject this contention. It is true that a parent is prevented from challenging the reasonableness of services on appeal if the issue was not first brought to the attention of the juvenile court.

## DISPOSITION

The petition is granted. The juvenile court is ordered to (1) vacate its order of January 29, 2008, terminating mother's reunification services and setting a section 366.26 hearing, and (2) extend mother reunification services as required by section 366.21, subdivision (g)(1). This opinion is final forthwith as to this court under rule 8.264 of the California Rules of Court.

Cooper, P. J., and Flier, J., concurred.

---

(See *In re Christina L.* (1992) 3 Cal.App.4th 404, 416 [4 Cal.Rptr.2d 680].) But in this case, mother did not know of the social worker's deficiency in implementing the case plan until the 12-month hearing when her services were terminated.