Filed 1/24/14  In re K.W. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re K.W. et al., Persons Coming Under the Juvenile Court Law. | |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | C072514 |
| Plaintiff and Respondent, | (Super. Ct. Nos. JD232316, JD232317) |
| v. | |
| Wanda W., | |
| Defendant and Appellant. | |

Wanda W., mother of the minors, appeals from the judgment of disposition. (Welf. & Inst. Code, §§ 360, 361, 395.)[1]  Mother contends the juvenile court erred in failing to order services tailored to her needs as a developmentally disabled individual before determining she was unable to benefit from services pursuant to the bypass

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

provision of section 361.5, subdivision (b)(2).[2] Mother does not argue that substantial evidence did not support the bypass order, but instead argues there is insufficient evidence to support the juvenile court's finding that reasonable efforts had been made to provide necessary services to mother. Mother also argues she was denied due process because she did not have a fair opportunity to show whether she was capable of properly caring for the minors before services were bypassed. We conclude substantial evidence supports the juvenile court's finding that reasonable efforts were made. We reject mother's due process claim because she had notice the bypass provision was being considered and participated in the hearing on the issue. Accordingly, we affirm the judgment.

FACTS

The minors, K.W. and M.W., were born prematurely in March of 2012. Eleven days later a mandated reporter informed the Sacramento County Department of Health and Human Services (Department) that mother appeared to be unable to learn basic child care skills although the nurses had worked with her on these skills since the minors were born. On April 4, 2012, the social worker spoke to hospital staff who provided examples of mother's inability to care for the minors and difficulty processing information when staff attempted to instruct her on basic child care. Staff was concerned about the maternal grandmother's apparent lack of support for mother. Hospital records showed mother had been assessed and diagnosed as having a developmental disability. The doctor told the social worker that the minors, while medically fragile, were ready for

---

[2] Section 361.5, subdivision (b), provides: "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: . . . (2) That the parent or guardian is suffering from a mental disability that is described in Chapter 2 (commencing with Section 7820) of Part 4 of Division 12 of the Family Code and that renders him or her incapable of utilizing those services."

discharge but were not released because mother was unable to demonstrate she could care for the minors' basic needs.

The social worker met with mother, the maternal grandmother, and maternal aunt the next day. Mother did not respond to the social worker's questions but deferred to the maternal grandmother and maternal aunt. The relatives agreed they would be providing primary care for the minors because mother, who lived with them, would be unable to do so. However, both declined to engage the services of Birth and Beyond, an in-home program designed to assist with parenting needs, although they had previously told the hospital social worker they would do so. On April 6, 2012, both the maternal grandmother and maternal aunt again refused to permit the Birth and Beyond program access to their home and did not see why the service was necessary since they would be caretakers of the minors. The social worker pointed out that for mother to be able to care for the minors she would benefit from parenting education due to her delays. Both the maternal grandmother and maternal aunt insisted mother had no cognitive delays and acted "normal" in her regular life.

The Department placed the minors in protective custody and filed a petition that alleged the minors were at substantial risk of serious physical harm due to mother's significant developmental delays that impaired her judgment and ability to care for the medically fragile minors. At the initial hearing, the juvenile court detained the minors, found reasonable efforts were made to prevent removal and ordered the Department to offer reunification services to mother without prejudice to further recommendations by the Department.

The jurisdiction/disposition report stated mother denied she needed any assistance in her daily life and insisted the hospital staff made false statements about her ability to care for the minors. Mother said she was able to perform all necessary tasks after some instruction. Mother told the social worker she was evaluated by Alta Regional Center (Alta) 12 years earlier and was found ineligible for services. She had been in a special

education class as a child but as an adult had lived on her own, paid her own bills and attended school. Mother was willing to participate in services. The maternal grandmother and maternal aunt continued to insist mother had no developmental or mental disability and was capable of caring for the minors. Both the maternal grandmother and maternal aunt claimed the hospital staff made false statements about mother. The social worker contacted Alta whose records showed there had been a telephone call about mother but mother had not been assessed.

The social worker's report described mother's first two scheduled visits with the minors. The social worker asked the visit supervisor to allow mother to demonstrate her abilities on her own to assess her ability to care for the minors. Visits were marked with mother's inability to respond to the minors' cues or the supervisor's suggestions. Mother needed continuous instruction and was unable to split her attention between tasks or between children. She was unable to feed the minors the proper amount of formula in an appropriate manner. Mother's contact with the minors was mechanical and not interactive or responsive to their needs. At the second visit, mother remembered some instructions from the first visit but still needed almost continuous support and direction from the social worker or visit supervisor.

Based on the observations during visits, the social worker concluded mother did have significant delays. Mother struggled with independent decision making regarding basic child care and needed instruction and reminders on common care activities. The social worker recommended referring mother for two psychological evaluations to explore her limitations and determine whether she would benefit from services. Further, if services would be beneficial, the evaluations could identify what type would best suit mother's needs.

An addendum report in May 2012 stated the social worker had reviewed hospital records that described mother's inability to retain information and follow simple instructions. Mother also had difficulty remembering the minors' names.

4

A second addendum report discussed mother's visits in April and May of 2012. While there were some areas of progress, and increased interaction between mother and the minors, mother was easily confused, had difficulty prioritizing the minors' needs even with suggestions from the social worker, failed to follow suggestions, and had to ask directions several times to perform some basic child care activities. The addendum stated mother was participating in a parenting class and the social worker was investigating an organization that could provide services, including parenting assistance, to developmentally disabled adults.

A third addendum report in June 2012 provided information from a nurse at the hospital regarding mother's difficulties in applying instructions on infant care or in following modeled caretaking behavior. The nurse also noted the maternal grandmother did not intervene or otherwise assist mother. The nurse believed someone would have to be constantly present to assist mother in caring for the minors.

At the jurisdiction hearing in June 2012, mother's counsel argued the Department had not shown mother had a significant developmental delay. The juvenile court sustained the petition as amended, finding the observations of the nurses at the hospital and the social workers were consistent and established mother's impairment and inability to retain information. Mother's counsel objected to the court ordering psychological evaluations for mother because services could be tailored for her without them. The social worker informed the court an Alta evaluation was pending, mother had completed the parenting class, and the most relevant service was coaching on parenting skills mother received during visitation. The court ordered two psychological evaluations.

A fourth addendum report in July 2012 noted mother's ongoing issues with adequate parenting during visits. The addendum also provided the results of the two psychological evaluations that concluded mother's limitations were too profound to

permit her to reunify with the minors within the statutory time limit.[3] Her functioning was found to be well below average and she had a poor understanding of basic parenting. Mother's profile indicated a preference for a simple, repetitive dependent life pattern marked by the absence of responsibilities. Her deficits would preclude her from managing the responsibilities of a primary caretaker of the minors. The addendum acknowledged mother had made some progress in concrete skills but continued to have difficulty in critical thinking regarding prioritizing the minors' needs and required constant direct supervision to prevent placing the minors at risk. The Department recommended denying reunification services to mother due to her inability to benefit from them.

A final addendum report filed in October 2012 stated mother had ongoing problems retaining information regarding the minors' care and still needed prompts for basic activities. She had improved her interaction with the minors and made efforts to remember the child care information but was unable to do so. As the minors' needs changed, mother needed continued training and coaching because she was unable to extrapolate from prior experiences. Mother was unable to learn a routine for child care when the social workers modeled it and did not benefit from coaching. Mother had scheduled an intake assessment at Alta but cancelled at the last minute. A second intake appointment was scheduled. Mother avoided discussing the Alta assessment with the social worker and declined to sign a release of information for the social worker to communicate with Alta. The Alta intake counselor told the social worker mother had

---

[3] Mother's counsel secured a third psychological evaluation that found mother was moderately mentally retarded, but concluded it was too early to assume she was unable to benefit from services and recommended an Alta evaluation with a review in four to six months. The evaluation was attached to mother's trial brief but was not entered into evidence or considered by the juvenile court. The trial brief identified the legal issues as to whether the minors should remain out of the home and whether section 361.5, subdivision (b)(2), applied to mother.

attended the intake assessment appointment but the intake process was pending while the eligibility team determined whether mother needed further testing.

### *Disposition Hearing*

At the disposition hearing, the maternal aunt testified that mother had lived with her and the maternal grandmother for about a year. She had thought mother could care for the twins but had changed her mind due to the reports and psychological evaluations. She did not think mother had a developmental delay because mother had a job in high school, went to college, had a job as an adult, and had lived on her own. Mother had also helped her with her own children. The maternal aunt testified that mother received benefits due to her learning disability and had a payee from the age of 19 because she could not manage her own money.

The social worker testified she did not agree with the psychological evaluation secured by mother's counsel because she did not see that it contained a clear analysis of why mother would be able to benefit from services. She acknowledged that two of the three evaluators recommended a referral to Alta. The social worker stated mother did an intake assessment for Alta in September 2012. She was concerned the maternal grandmother and maternal aunt were unwilling to support mother at the level that was required if the minors were placed with mother and neither relative had visited the minors since their birth.

Mother's counsel objected to the juvenile court applying the bypass provision of section 361.5, subdivision (b)(2), to deny services to mother. Counsel observed mother had begun to be involved in Alta. Mother did not argue reasonable efforts were not made to prevent the need for removal.

### *Juvenile Court's Ruling*

The juvenile court started with the applicable law: "Pursuant to [s]ection 361.5, [subdivision] (b)(2), the Court may deny reunification services to a person who is suffering from a mental disability as it is described in Family Code Section 7820 and the

7

code sections which follow. The reason for such denial is that the person would not be able to benefit from using those reunification services. As set forth in Family Code Section 7827, the Court must have the opinions from two mental health experts in order to make a determination of such a mental disability."

The juvenile court ruled that the two psychological evaluations agreed mother had "notable deficiencies that would compromise her ability to manage the responsibilities associated with providing for [the minors'] needs and well-being on her own." The court found the "shared opinion is supported by the other evidence presented, which includes descriptions of the mother's time spent with the [minors] and observations of her attempts to care for them." Pursuant to the bypass provision of section 361.5, subdivision (b)(5), the court determined mother was suffering from a mental disability and was incapable of utilizing reunification services to reduce or alleviate the risk to the minors. The court also found reasonable efforts were made to prevent or eliminate removal from the home. As to mother, the court ordered reunification services shall not be provided.

DISCUSSION

I

***Reasonable Efforts***

Mother does not argue substantial evidence did not support the bypass order. Instead she argues the juvenile court could not make a finding that the Department made reasonable efforts to prevent removal of the minors because the voluntary services offered were inadequate because they did not take into account her developmental disabilities.

The juvenile court must make a finding that the Department made reasonable efforts to prevent or eliminate the need for removal at two points. The first is at the initial petition hearing when the court is making an order for temporary custody. (§ 319, subd., (d)(1).) The second is at the disposition hearing. (§ 361, subd. (d).) At that point, if the court determines the minor must be removed from parental custody because there is

8

a substantial danger to the physical health of the minor, the court must also determine whether reasonable efforts were made to prevent or eliminate the need for removal. (§ 361, subds. (c) & (d).) To the extent mother's argument challenges the finding at the initial petition hearing, the challenge has been mooted by the subsequent finding at the disposition hearing by a higher standard of proof. (Cal. Rules of Court, rules 5.676(a), 5.678(a) & (c).)

Mother essentially challenges the sufficiency of the evidence to support the juvenile court's finding that reasonable efforts were made to provide necessary services to mother. When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- to support the conclusion of the trier of fact. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.)

The interim and voluntary nature of the services provided prior to and during the full investigation of the parent's needs in anticipation of dispositional orders means the social worker is making a best guess at what will be most helpful to a parent who is facing removal of a child. The social worker must assess changing information and refer the parent to preliminary services that will hopefully eliminate the need for removal. The ongoing assessment prior to disposition means additional services may be identified to address the root causes of the problems that led to filing the petition.

In this case, there was conflicting evidence of the cause and degree of mother's apparent developmental disability. Observations of the hospital staff, the social worker, and the visit supervisor indicated serious deficits that training and education were unlikely to remedy. On the other hand, family members and mother denied she was unable to function at an average level and she had not provided proper care for the minors in the hospital once she had been instructed on what was needed. The social worker referred mother to parenting classes and parenting modeling was provided at visitation.

9

The social worker tried unsuccessfully to find services for disabled adults and sought psychological evaluations that would more clearly identify the nature and extent of mother's deficits and what, if any, services might be best to include in her case plan. While the social worker could have made a referral to Alta, the failure to do so was reasonable in light of the information that mother had previously been found ineligible and either mother or the maternal grandmother had made a new request for an intake assessment by Alta after the minors were removed. (§ 4642 [intake assessment available after a request for assistance].) The intake assessment was performed prior to disposition, but had not yet resulted in services and the social worker was unable to discuss the assessment with Alta because mother refused to sign a release. Here, in the period between the temporary detention and disposition, the social worker made reasonable efforts to provide necessary services to mother and tried to determine what further services might benefit her. Substantial evidence supports the juvenile court's finding that reasonable efforts were made.

## II

### *Due Process*

Mother further argues that the failure to provide reasonable services, including a referral to Alta for evaluation, constituted a denial of due process because she did not have a fair opportunity to show whether she was capable of properly caring for the minors before services were bypassed.

As we have discussed, the services offered prior to the disposition hearing are preliminary in nature. If the issues to be resolved are clear cut, such services may result in enough progress by the parent to prevent removal. The issues in this case were not so clear.

Reunification services are a benefit, not a constitutional right. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 750; *In re Aryanna C*. (2005) 132 Cal.App.4th 1234, 1242.) The contours of the benefit offered are highly dependent on the nature of

10

the facts available to the social worker.  Just as it is not every case that preliminary services can resolve, it is not in every case that formal reunification services result in return of the minor.  In some circumstances, this may be apparent at the outset of the case and bypass of services is justified.  (§ 361.5, subd. (b).)

Mother provides no authority to support the proposition that a parent must be placed in the best possible circumstances to benefit from services prior to disposition.  Mother relies on authority dealing with services provided during reunification.  (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340 [12-month review hearing]; *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415 [12-month review hearing]; *In re Victoria M.* (1989) 207 Cal.App.3d 1317 [termination case dealing with services post disposition]; *In re Christina L.* (1992) 3 Cal.App.4th 404 [same]; *In re Elizabeth R.* (1995) 35 Cal.App. 4th 1774 [same]; *In re K.C.* (2012) 212 Cal.App.4th 323 [12-month review hearing]; *Guardianship of Christian G*. (2011) 195 Cal.App.4th 581 [probate guardianship discussing failure to refer to CPS].)  These cases are inapposite to the factual setting of this appeal involving the bypass provision of section 361.5, subdivision (b)(2).

Further, the bypass provision of section 361.5, subdivision (b)(2) has withstood previous constitutional challenges.  (*In re Christina A.* (1989) 213 Cal.App.3d 1073, 1078-1080.)  Mother had notice that the bypass provision was being considered and had a full contested hearing on the issue with expert evidence as required.  As the juvenile court stated, the two psychological evaluations agreed mother had "notable deficiencies" that would compromise her ability to manage the responsibilities of caring for the minors on her own and her limitations were too profound to allow her to reunify within the statutory time period.  The court noted there was other evidence presented that supported this conclusion, including descriptions of the mother's time spent with the minors and observations of her attempts to care for them.  Mother has not demonstrated how either the statute or the preliminary dependency proceedings violated her due process rights.

11

DISPOSITION

The judgment is affirmed.


                                        HOCH        , J.


We concur:



     BLEASE     , Acting P. J.



     DUARTE     , J.