Filed 11/24/14  C.P. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| C.P.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SOLANO COUNTY,<br><br>        Respondent;<br><br>SOLANO COUNTY HEALTH & HUMAN SERVICES DEPARTMENT, et al.,<br><br>        Real Parties in Interest. | A142999<br><br>(Solano County<br>Super. Ct. Nos. J40436 & J41019) |

**MEMORANDUM OPINION**[1]

Petitioner C.P. ("mother") seeks extraordinary relief from orders of the juvenile court terminating reunification services with her two daughters, B.A.P. and B.P. (jointly "minors"), and scheduling a hearing under Welfare and Institutions Code section 366.26.[2] Because we conclude the record amply supports the juvenile court's decision to terminate

---

[1]   We resolve this case by a memorandum opinion pursuant to California Standards of Judicial Administration, sections 8.1(1), (3). (Cal. Stds. Jud. Admin., §§ 8.1(1), (3).)

[2]   Further undesignated statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

services and set a section 366.26 hearing, we shall deny the petition for extraordinary relief on the merits.[3]

On May 17, 2013, Solano County Health and Social Services Department ("Department") filed a section 300 dependency petition on behalf of mother's three daughters B.K. (then 15 years old), B.A.P. (then seven years old), and B.P. (then two years old). In the petition, the Department alleged mother and the children's fathers failed to protect them (§ 300, subd. (b)) on account of parents' untreated substance abuse and unsanitary and unsafe conditions in the home. On May 20, 2013, the juvenile court ruled parents had found an acceptable alternative placement for 15-year-old B.K. and detained B.A.P. and B.P.

At a hearing on the section 300 petition in August 2013, parents submitted to jurisdiction under the subdivision (b) allegations noted above. The court adjudged the minors dependents of the court, continued their out-of-home placement as appropriate, ordered reunification services to parents, and scheduled the six-month review hearing on January 30, 2014.[4] The status report submitted by the Department in connection with the six-month review hearing showed that, during the initial phase of these dependency proceedings spanning May to December 2013, mother was in denial regarding the problems leading to the minors' removal and failed to engage in the services offered to

---

[3] Because the factual circumstances underlying mother's claims of error, including those relating to the current proceeding as well as her prior history of involvement with the Department, are known to the parties and summarized in detail in the "Statement of Facts" set forth in the Department's "Response to Petition for Extraordinary Writ" filed in this matter on October 30, 2014, we describe only the background necessary to frame our subsequent discussion.

[4] The six-month review hearing must be held six months after the initial dispositional hearing but no later than 12 months after the minor entered foster care (§ 366.21, subd. (e)); ". . . a child shall be deemed to have entered foster care on the earlier of the date of the jurisdictional hearing held pursuant to Section 356 or the date that is 60 days after the date on which the child was initially removed from the physical custody of his or her parent or guardian" (§ 361.49).)

address the problems.  Indeed, at the six-month stage, the Department recommended termination of services because mother had continued to abuse drugs, failed to address her mental health needs, and had "yet to participate in a parenting program and continues to struggle managing her own resources and needs."  Mother continued to use drugs into 2014 and tested positive for both marijuana and methamphetamine on January 31 and March 4, 2014.

However, the contested six-month review hearing was not held until June 17, 2014.[5]  After initially denying mother's counsel's request for a further continuance of the hearing,[6] the juvenile court received evidence that mother attended group sessions at Healthy Partnerships's outpatient substance abuse treatment program during January and February 2014; resided at Laurel Creek, a crisis residential treatment center for mental health, from February 28 to March 17, 2014; and upon discharge from Laurel Creek entered Shamia House Recovery Center (Shamia House), a six-month residential drug-treatment program.

After presentation of evidence, the court stated mother would not have received additional services had the six-month review hearing been held when initially scheduled in January because she was "still in denial" and "not in compliance."  However, based on mother's recent efforts, the court observed mother "appears to be fairly serious in treatment," and whereas "it would be premature to give the kids back to her now, . . . it looks like we shouldn't disrupt the process and give her additional time for services."  Accordingly, the court concluded: "it would be appropriate to extend additional services . . . up to the twelve-month period" and scheduled the 12-month review for July 24, 2014.

---

[5]  On October 30, 2014, the Department filed a request for judicial notice of the Reporter's Transcript of the contested six-month review hearing held on June 17 and 18, 2014, which is included in the record in related appeal no. A142679.  The request for judicial notice is granted.

[6]  The court stated:  "I'm very, very reluctant to continue this matter. . . . [¶] . . . [I]t's due for a twelve-month review now, and we haven't even gotten the six-month review done, so that's an incredible extension, it seems to me."

After further continuances, the 12-month review hearing was held on September 3 and 4, 2014. At the hearing, mother testified she had been in the residential drug-treatment program at Shamia House for over five months and was due to graduate from the six-month program in two weeks time, on September 17, 2014. While staying at Shamia House, mother was subject to random drug testing and had been drug-free since March 2014. Also, at Shamia House, mother completed classes in early recovery skills; recovery issues; relapse prevention; parenting; helping women recover; and beyond trauma. In addition, mother attends Narcotics/Alcoholics Anonymous five times per week. Mother is on probation and requested it be made a condition of her probation that she remain at Shamia House. After graduating from Shamia House, mother planned to live with her mother "to get stabilized" before looking for other housing.

Following presentation of evidence, mother's counsel stated mother "is not asking for the immediate return of her children" because "she's obviously not in a position to take care of them right now." Rather, counsel requested mother receive an extension of reunification services. The juvenile court noted mother, "by her own admission isn't ready to have the kids back," and found by a preponderance of the evidence that returning the minors to mother would create a substantial risk of detriment to the minors' safety, protection, or physical or emotional well-being. In addition, the juvenile court found the Department provided reasonable services to address the problems leading to removal of the minors. Last, the juvenile court found there was no substantial probability the minors could be returned to mother because, after graduating from Shamia House, she would "have to be stabilized in the community for quite a bit longer" than the short time before the 18-month point defined under section 366.21.[7] Thereafter, the juvenile court terminated reunification services and scheduled a permanency planning hearing pursuant

---

[7] The minors were taken into custody on May 15, 2013; thus the latest date for the 18-month permanency review hearing was on or about November 15, 2014. (See § 366.21, subd. (g)(1).)

4

to section 366.26 on December 18, 2014. On October 14, 2014, mother filed a petition for an extraordinary writ in this court, seeking an order directing the juvenile court to vacate its order terminating reunification services and scheduling a section 366.26 hearing and to provide her further reunification services as to the minors. We issued an Order to Show Cause and the Department filed a response to mother's petition on October 30, 2014.

## DISCUSSION

When a dependent child is not returned to parental custody at the 12-month review hearing, the court may continue reunification services and set a permanency review hearing within 18 months from the date a child was removed from parental custody. (§ 366.21, subd. (g)(1).) However, the court may continue the case "only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent . . . and safely maintained in the home within the extended period of time or that reasonable services have not been provided to the parent . . . ." (§ 366.21, subd. (g)(1).)

In order to find a substantial probability of return, the court is required to find the parent has consistently visited the child (§ 366.21, subd. (g)(1)(A)); the parent has made substantial progress in resolving the problems that lead to removing the child (§ 366.21, subd. (g)(1)(B)); and "[t]he parent . . . has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1)(C).)

Mother contends the juvenile court's finding there was no substantial probability of returning her children to her by the 18-month date is arbitrary, capricious, and lacking in substantial evidence. We disagree.

On a challenge to a finding there is no substantial probability that the child will be returned to the physical custody of his or her parent and safely maintained in the home by

5

the 18-month review hearing, our review is limited to whether the finding is supported by substantial evidence. We view the record in the light most favorable to the finding and decide if the evidence supporting it is reasonable, credible, and of solid value. (See *In re Casey D.* (1999) 70 Cal.App.4th 38, 52–53.)

Here, the record reflects that on September 25, 2012, the juvenile court terminated jurisdiction in mother's prior dependency proceeding, which also involved problems of substance abuse and domestic violence. Mother was offered substance abuse treatment in that proceeding and by the termination date had stopped using methamphetamines and marijuana. Only eight months later, the Department initiated the current dependency proceedings following mother's relapse into her prior habits of substance abuse. Yet mother did not engage in services at all for the first seven or eight months of these dependency proceedings; rather, she was in denial and continued to use drugs. Mother only began to sustain any progress in addressing her problems after entering the residential treatment program at Shamia House. But by the time of the 12-month review hearing in September 2014, mother still had two weeks of the six-month program at Shamia House to complete, was uncertain about where she would be staying after leaving Shamia House, had not demonstrated an ability to stay drug-free in the community outside of a structured residential program, and the 18-month date was looming. Thus, while mother's efforts at Shamia House are to be commended, at the 12-month review hearing mother failed to persuasively demonstrate her capacity and ability to provide for the minors' safety, protection, physical/emotional well-being, and special needs, as required to continue services to the 18-month hearing under section 366.21, subdivision (g)(1). (See *M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 177–178.) In sum, the court's finding there was no substantial probability the minors could be returned to mother within the short period of time before the 18-month date is supported by substantial evidence in the record.

6

Mother also contends the Department failed to provide reasonable services to address the sexualized behavior exhibited by her daughter B.A.P.[8] Specifically, mother asserts the Department should have referred her to participate in counseling with B.A.P.

"The 'adequacy of reunification plans and the reasonableness of the [Department's] efforts are judged according to the circumstances of each case.' [Citation.] To support a finding reasonable services were offered or provided, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.]" (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426, italics omitted.) We review the juvenile court's finding of reasonableness under the substantial evidence test. (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1346.)

Here, the principal problems leading to the loss of custody were mother's inadequate parenting skills, chronic substance abuse, and attendant mental health issues. The Department provided services designed to remedy those problems. Mother received mental health counseling and participated in medication management with Dr. Lawrence Tunnis, a mental health clinician with Forensic Assessment Community Treatment. She availed herself of substance abuse services by participating in an outpatient program at Healthy Partnerships followed by the residential treatment program at Shamia House. At

---

[8] This behavior was noted in the Department's six-month status report. B.A.P.'s caregivers stated she "touch[es] herself" and found her naked in her room "with her hand in her crouch [*sic*]." Also, a medical exam in November 2013 revealed the minor had "anal sphincter relaxation as well as a thin clitoris," which were abnormal for a child her age and the doctor could not rule out sexual abuse. The report stated B.A.P. participates in individual counseling; the counselor has concerns about sexual abuse by father, "although the minor has not made any disclosures."

Shamia House, mother engaged in counseling to address parenting, and participated in the Nurturing Parenting Program as well as the courses noted above. Also, the social worker tried to introduce mother to the problem of her daughter's sexualized behavior by providing short articles on sexual abuse and an accompanying questionnaire; however, mother did not want to discuss the readings in further detail with the social worker because she found them distressing. In any case, B.A.P.'s sexualized behavior, which the Department addressed by providing her with intensive counseling, was not the reason the minor was removed from mother's custody; rather, mother's inadequate parenting skills and chronic substance abuse led to the minor's removal, and the record demonstrates the Department provided reasonable services to address those problems.

## DISPOSITION

The petition for extraordinary writ is denied on the merits. (See Cal. Const., art. VI, § 14; *Kowis v. Howard* (1992) 3 Cal.4th 888, 894; *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1024.) The decision is final in this court immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

 

_____
Dondero, J.


We concur:


_____
Humes, P.J.


_____
Banke, J.