Filed 3/21/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re CHRISTIAN K., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>CHRISTIAN K.,<br><br>　　　Objector and Appellant. | A151695<br><br>(Alameda County<br>Super. Ct. No. OJ14022433-02) |

After terminating the parental rights of Julie K. (Mother) and selecting adoption as the permanent plan for her son, appellant Christian K., the juvenile court ordered a case plan calling for Christian to undergo weekly therapy. Because of delays and scheduling issues, Christian attended fewer sessions than were planned. At a post-permanency review hearing, the court approved an extended overseas trip for Christian to visit with his planned adoptive family even though the court agreed that Christian would benefit from additional therapy. We conclude that the court's order approving the trip was proper under Welfare and Institutions Code section 366.3, subdivision (g)[1] to protect Christian's stability and to facilitate and expedite his adoption, and we therefore affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

We described the factual and procedural background of these proceedings in our previous opinion in which we reversed the juvenile court's termination of Mother's parental rights, and we need only summarize that background here. (*In re Christian K.* (Sept. 7, 2017, A150346 [nonpub. opn.] (*Christian K. I*).) In February 2014, respondent Alameda County Social Services Agency (Agency) filed a dependency petition as to then four-year-old Christian alleging that his parents' struggles with drug abuse affected their ability to parent him. Mother made progress in her case plan but failed to reunify with Christian, and the juvenile court terminated reunification services and scheduled a selection-and-implementation hearing.

Meanwhile, Christian's paternal grandmother (Grandmother), who lives in Denmark, expressed interest in having Christian placed with her and her husband (Step-Grandfather). Christian visited with Grandmother when she traveled to the United States to see him, and the Agency ultimately recommended that parental rights be terminated so that Grandmother could adopt Christian. In a report filed in advance of the selection-and-implementation hearing, the Agency also recommended a case plan that included weekly therapy for Christian.

Following a hearing in January 2017,[2] the juvenile court terminated Mother's parental rights and selected adoption as the permanent plan. Mother appealed in February. (*Christian K. I*, *supra*, No. A150346.)

Also in February, a therapist was assigned to Christian, but Christian's foster mother failed at first to follow up when the therapist called to arrange appointments. Christian ultimately began therapy in March. The Agency reported that it was sometimes difficult to arrange his transportation to therapy because the foster family apparently was either unable or willing to provide it. Christian's therapist reported that it would be

---

[2] All further date references are to 2017.

2

important for Christian's emotional well-being to increase his contact with Grandmother during the transition to adoption.

Grandmother came to the United States for a month from mid-March to mid-April, and Step-Grandfather joined her for part of this time. They spent an entire week with Christian during his spring break and took him on a trip to San Diego, and Grandmother continued to visit with Christian on weekends after Step-Grandfather returned to Denmark for work. A social worker reported that Christian was "very playful" with Grandmother, and that the grandparents bought Christian a couple of soccer balls and played soccer with him.

During her visit, Grandmother attended therapy sessions with Christian, and Step-Grandfather also attended a session during his shorter visit. Reportedly, there was "mutual hostility" between Grandmother and Christian's foster mother, including disputes over telephone contact between Christian and Grandmother, that required court intervention. Part of the reason for therapy was "to begin to repair the relationship between Christian and [Grandmother]." Social workers transported Christian to therapy sessions in late March and early April, and a worker met with the therapist in May at Christian's school. A mid-April therapy appointment was canceled, however, so that Christian could get a passport, and additional appointments were missed because of an apparent miscommunication about meeting at Christian's school. Christian was told in May about moving to Denmark and was "given time to process the information with his therapist." Christian was reassigned a new therapist around this time.

Christian's visitation with Mother ended in May because of the pending adoption. Christian was upset about this, and his foster mother reported that Christian cried several times about not being able to see Mother and asked why he could no longer see her. The foster mother was concerned about the effect that suspending visits had on Christian's emotional well-being. Christian's court-appointed special advocate (CASA) filed a report stating that Christian still had strong emotional ties with Mother, and that she (the CASA) would support returning custody of Christian to Mother, if possible.

Christian told a social worker that he liked living with his foster mother, that he wanted to live with Mother or his foster mother, and that he did not want to move to Denmark. Nonetheless, in June, the Agency recommended that the juvenile court order a 30-day trial visit to Denmark for Christian and stated it might request other extended visits until *Christian I* was resolved or the court ordered that the placement be completed. The Agency also asked that the juvenile court find that reasonable services had been provided to Christian.

The court held a held a post-permanency review hearing on June 23 under section 366.3 and California Rules of Court, rule 5.740.[3] Christian's attorney disagreed with the Agency's assessment that Christian had received reasonable services. Counsel argued that Christian needed additional therapy in order to ensure a smooth transition to moving overseas. Because Christian had attended only a few therapy sessions, counsel asked that there be no placement change until Christian received therapy for "not necessary[il]y six months, but a significant period of time. Perhaps eight sessions would do. I don't know—whatever would make that therapist comfortable in opining such, what this move would mean to [Christian], whether it would be to his detriment."

County counsel acknowledged the importance of therapy but attributed Christian's anxiety to being "in limbo for so long," and argued that the placement should proceed as soon as possible. The attorney stated he did not know whether Christian's counsel was "trying to set this matter for contest in which [case] I could arrange for the child welfare worker to be here so she could explain what happened with the therapy sessions that did not occur and what the Agency did to remedy that." Christian's counsel responded that he was "not particularly asking to present additional evidence," but that it was the Agency's burden to prove it had provided reasonable services, and the Agency had not done so in its report filed before the hearing.

The juvenile court sided with county counsel, observing that the longer Christian was "in limbo, the more difficult it's been on him." As for Christian's attorney's

---

[3] All rule references are to the California Rules of Court.

arguments, the court stated that "I think that your [Christian's attorney's] arguments are accurate and they are profound and I agree with everything that you have said. And I also agree [with county counsel] that it is time for him to go [to Denmark]. It is at a point where it needs to happen now. I think the limbo is worse for him than anything else . . . . So I am not going to order that he stay here more months so that he can go to therapy."

The parties again argued over whether Christian needed to "set a contest" on whether the Agency provided reasonable services. County counsel argued that setting such a "contest" was necessary, while Christian's attorney reiterated that it was the Agency's burden, which it had not met, to prove by clear and convincing evidence that reasonable services had been provided. County counsel then argued that "as we all know reasonable services are not perfect services." Christian's counsel countered that the services fell far short of being reasonable.

The juvenile court found that Christian's case plan was necessary and appropriate, that the permanent plan of adoption continued to be appropriate, and that the likely date by which the Agency would finalize the permanent plan was December 23. As for services, the court stated, "Given the fact that no contest is being set the Court will find that reasonable services have been provided to Christian." The minute order entered after the hearing reiterated that "[r]easonable services have been provided by the Social Services Agency." It then ordered the 30-day trial visit to the home of the paternal grandparents. Christian appealed.

On September 7, we reversed the order terminating parental rights because Mother had met her burden of establishing the applicability of the beneficial-relationship exception to adoption under section 366.26, subdivision (c)(1)(B)(i), and we remanded to the juvenile court for further proceedings. (*Christian K. I*, *supra*, No. A150346.) On September 15 and again on October 20, Christian's attorney asked for extensions of time to file an opening brief in this matter until after the juvenile court held a hearing in response to *Christian K. I*. Counsel stated in both requests, "Should [Christian] be returned to the mother or to a placement in Alameda County, it would appear that this appeal may be moot." Christian's attorney later notified the court that the matter was

5

scheduled for a hearing in the juvenile court on December 8 "for appointment of counsel and scheduling of hearings." Briefing proceeded in this court with no further requests for extensions of time, and we do not know what, if anything, happened at the December 8 hearing or at any subsequent hearing.

## II.
## DISCUSSION

Christian argues that the juvenile court wholly failed to exercise its discretion when it denied his request to postpone his trip to Denmark until he received additional therapy because it based its finding of reasonable services solely on the fact that Christian did not request a contested hearing. Alternatively, Christian argues that insufficient evidence supports the finding that he received reasonable services. Because we conclude that these arguments are inconsistent with what is required under section 366.3 after a juvenile court orders adoption as the permanent plan, we reject them.

When a juvenile court orders a permanent plan of adoption, the court is required to retain jurisdiction over the child until the child is adopted. (§ 366.3, subd. (a); rule 5.740(a).) The court is required to hold a hearing at least every six months, where it is to consider a report from the social-services agency regarding the child's current placement and efforts to finalize an adoption. (§ 366.3, subds. (d), (g); rule 5.740(a)(1).) At these hearings, the court is to make determinations on several issues, including the adequacy of services provided to the child. (§ 366.3, subd. (e)(6); rule 5.740(a)(1).) Once it has done so, the court is authorized to "make appropriate orders to protect the stability of the child and to facilitate and expedite the permanent placement and adoption of the child." (§ 366.3, subd. (g).) The court terminates its jurisdiction when an adoption is granted. (§ 366.3, subd. (a); rule 5.740(a)(3).)

Services are offered to children and families throughout juvenile-dependency proceedings, but these services are treated differently by statute at different stages. If the juvenile court finds that reasonable services have not been provided during the earliest stage, the first 12 months of the reunification period, the court is prohibited from terminating services and must order that additional services be provided. (§§ 366.21,

6

subd. (g)(1), 361.5, subd. (a)(3)(A), 366.21, subd. (g)(1), 366.26, subd. (c)(2)(A); *In re Alvin R.* (2003) 108 Cal.App.4th 962, 973-974 [six-month review hearing]; *Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1345 [12-month review hearing].) The court may in its discretion extend reunification services beyond 18, and up to 24, months, but only if certain findings are made. (§§ 361.5, subd. (a)(4)(A), 366.22, subd. (b); *Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1500-1501, 1504 [although social-services agency did not provide reasonable services during reporting period, juvenile court not obligated to provide reunification services beyond 18 months except in limited circumstances].)

After a permanent plan of adoption has been selected, however, services are treated differently. Section 366.3, which governs this stage, does not mandate a particular consequence if adequate services are not provided. (§ 366.3, subds. (a), (d), (e), (g).) As we have mentioned, the statute directs the juvenile court to "determine" the "adequacy of services provided to the child" (§ 366.3, subd. (e)(6)) and to "make appropriate orders to protect the stability of the child and to facilitate and expedite the permanent placement and adoption of the child." (§ 366.3, subd. (g).) Because no consequence is mandated for the failure to provide reasonable services, the statute confers discretion upon the court to issue any appropriate order to protect a child's stability and to expedite the child's permanent placement—which may or may not include further services—regardless of whether services are found to have been wanting.

There is no dispute here that the juvenile court was required to consider and determine the adequacy of services that Christian received after the court selected his permanent plan. (§ 366.3, subd. (e)(6).) Christian contends that the court failed to do so because it stated at the review hearing that it found reasonable services were provided "[g]iven the fact that no contest is being set." We agree that a determination on the adequacy of services is not established simply as a consequence of the parties failing to request a contested hearing regarding services. (§ 366.3, subds. (e)(6) [juvenile court "*shall* determine" adequacy of services], (g) [social-services agency "*shall* prepare and present to the court a report describing" various factors], italics added.) But we disagree

7

that the court failed to consider and determine the adequacy of services. A review of the record shows that the court considered the services Christian received, agreed that more therapy would be helpful, but nonetheless ordered the trip to Denmark to promote Christian's stability and to facilitate and expedite the adoption.[4] Nothing about this contravened what is required under section 366.3.

The parties argue over whether substantial evidence supports a finding that reasonable services were provided to Christian. This argument is based on the false premise—one that seemingly was also assumed below—that the juvenile court was required to find that Christian's services were reasonable before it could order the trip to Denmark. In response to the argument by Christian's attorney that Christian had been denied reasonable services, the court remarked that the "arguments are accurate and they are profound and I agree with everything that you have said." In contrast, the minute order entered after the hearing stated that reasonable services were provided. But so long as the court considered and made a determination about Christian's services, which it did, it was authorized to order the trip to Denmark "to protect the stability of [Christian] and to facilitate and expedite the permanent placement and adoption of [Christian]" (§ 366.3,

---

[4] A review of the record also suggest that the juvenile court understood the need to determine the adequacy of services notwithstanding the fact Christian did not request live testimony on the issue. After lengthy argument on whether Christian was required to request a "contest," the following exchange took place:

"[Christian's attorney]: Again, I don't know how much more I can—I think the Court understands.

"THE COURT: *I do*.

"[Christian's attorney]: That it's the Agency's burden to bear, to present evidence of services provided and how they were reasonable. I agree with the premise that reasonable services may not be perfect, but we are a long, long way from perfect—a long way from below being imperfect but acceptable. Submit it.

"THE COURT: *I understand*." (Italics added.)

It is unclear why the juvenile court then tied its finding on the reasonableness of services to the fact that "no contest is being set." The minute order following the hearing correctly omitted any connection between these unrelated issues.

8

subd. (g)) even if the services were imperfect, unreasonable, or inadequate.[5]  We cannot conclude that this ruling was an abuse of discretion.

As we have mentioned, we do not know whether the juvenile court has issued subsequent orders or the content of any such orders.  The trip to Denmark was for only a four-week trial visit in June and July.  We do not know if the trip took place or if Christian has received additional services, including more therapy.  But no party has argued mootness, and we conclude only that the court did not abuse its discretion in denying Christian's request to postpone the trip for Christian to receive additional therapy.

III.
DISPOSITION

The juvenile court's June 23, 2017 order is affirmed.

---

[5] Even during the reunification stage, when a juvenile court is prohibited from terminating services without a finding that they were reasonable, it is settled that services need not be perfect but only reasonable under the circumstances.  (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

_____

Humes, P.J.

We concur:

_____

Margulies, J.

_____

Banke, J.

*In re Christian K.* A151695

10

Trial Court:

Superior Court of the County of Alameda

Trial Judge:

Hon. Kimberly M. Briggs

Counsel for Defendant and Appellant:

Amy Z. Tobin, First District Appellate Project

Counsel for Plaintiff and Respondent:

Donna R. Ziegler, County Counsel, County of Alameda

*In re Christian K.* A151695