Filed 6/11/14  Sandra C. v. Super. Ct.  CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SANDRA C. et al., | D065494 |
| Petitioners, | |
| v. | (San Diego County Super. Ct. No. J518551) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Real Party in Interest. | |

PROCEEDINGS for extraordinary relief after reference to a Welfare and

Institutions Code section 366.26 hearing.  Laura J. Birkmeyer, Judge.  Petition denied;

request for stay denied.

Dependency Legal Group of San Diego and Amanda J. Gonzales for Petitioner

Sandra C.

Dependency Legal Group of San Diego and John P. McCurley for Petitioner Ignacio C.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Erica R. Cortez, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Dependency Legal Group of San Diego and Lisa Storing for Minor.

Sandra C. seeks writ review of a juvenile court order terminating reunification services as to her minor son, Logan C., and setting a Welfare and Institutions Code section 366.26[1] hearing. Sandra contends (1) the court erred by not continuing her reunification services to the 18-month date; and (2) the San Diego County Health and Human Services Agency (the Agency) failed to provide her with reasonable reunification services.[2] We deny the petition and Sandra's request for a stay of the hearing.

FACTUAL AND PROCEDURAL BACKGROUND

Logan was born in December 2011 and was detained on October 27, 2012, when Border Patrol officers arrested Sandra at the border check point in Pine Valley for transporting heroin and crystal methamphetamine in her car. Sandra was stopped at the check point when she was returning from Centinela State Prison in Imperial where her husband Ignacio was incarcerated. Her sister April and Logan were with her in the car.

---

[1]     Statutory references are to the Welfare and Institutions Code.

[2]     Logan's father, Ignacio C, filed a notice of intent to file a writ petition and a letter joining in Sandra's brief.

2

Sandra and Ignacio had planned for April to smuggle the drugs into the prison in her vagina and pass them to Ignacio after taking Logan inside to visit him, but April refused to go through with the plan. Sandra was not allowed on the prison grounds because she was on probation for attempting to smuggle heroin into a jail through the mail.

Police later searched Sandra's home and found balloons used to transport heroin that were accessible to Logan in the room where she and Logan slept. They also found a plastic bag containing marijuana by Logan's crib. An officer with the San Diego Sherriff's Department informed the Agency that Ignacio was a gang member from Logan Heights and a member of the Mexican Mafia with a significant criminal history and a lot of power in prison and on the streets. He was a "go-to guy" for violence in and out of prison." He had access to a cell phone in prison and used it to call Sandra and April to ask them to do things for him, including asking Sandra to smuggle drugs.

The Agency filed a petition on behalf of Logan under section 300, subdivision (g), alleging that Sandra and Ignacio were incarcerated and unable to arrange appropriate and adequate care for Logan. In December 2012, the Agency amended the petition to add a count under section 300, subdivision (b), alleging that Sandra left Logan unattended and inadequately supervised due to her arrest in October for transporting methamphetamine and heroin with Logan present. The amended petition further alleged that Sandra admitted she was transporting the drugs at Ignacio's direction and had done so before, and that she was on probation for trying to smuggle drugs to him through the mail. Logan was detained in the home of Sandra's cousin Laura M. At the jurisdiction and disposition

3

hearing on December 27, 2012, the court sustained the amended petition, ordered reunification services for both parents, and continued Logan's relative placement.

The service objectives of Sandra's case plan included complying with court orders, maintaining her relationship with Logan by following the conditions of the visitation plan, staying sober and showing the ability to live free from alcohol dependency, staying free from illegal drugs and showing the ability to live free from drug dependency, complying with required drug tests, not breaking the law and avoiding arrests and convictions, and showing knowledge of age appropriate behavior for Logan. The case plan required Sandra to participate in weekly therapy "to address her self[-]esteem and poor decision making that placed her child at risk." The plan also required Sandra's participation in a substance abuse treatment program. The goal of that program and her services in general was to become educated on the dangers of drug use and trafficking and the risks they posed to her child, and how they affected her and her family.

Sandra was incarcerated at the time of her arrest in October 2012 and was released from work furlough on April 27, 2013.[3] During her incarceration she attended a parenting class, Narcotics Anonymous (NA) meetings, and an anger management class. She also received a food handler's certificate and a certificate of completion for attending seven classes of drug education. After her incarceration, Sandra attended a substance abuse program called ParentCare in addition to NA meetings and other services. She had fair attendance at ParentCare in May 2013 and poor attendance in June, and had not

---

[3]    Ignacio was released from prison around the same time that Sandra was released from jail.

completed any of the program's required assignments. She underwent a number of random drug tests with negative results, and tested positive for tetrahydrocannabinol (THC) on one test in June 2013. A counselor from ParentCare reported that Sandra listened to her and was aware of what she (Sandra) was doing, but still had not realized the danger she put Logan in when she transported drugs with him in the car.

Sandra had six visits with Logan while she was incarcerated and in the work furlough program and continued having supervised visits with him after her release. Sandra was affectionate with Logan and happy to see him and he enjoyed visiting her. At the contested six-month review hearing, the court found Sandra had made some progress with her case plan, and Ignacio had not made substantive progress with his case plan. The court continued reunification services for both parents.

Sandra's updated case plan required her to address in group therapy her understanding of what brought this case to the court's attention and to describe in detail the risk of harm from trafficking drugs in the presence of Logan. She was directed to write a letter explaining how selling drugs from her home could harm Logan "and exactly how things would be different in the future so this does not happen again." Both parents were ordered to participate in the dependency drug court.

In its report for the 12-month review hearing, the Agency recommended that the court terminate reunification services for both parents and set a section 366.26 hearing. Ignacio had been incarcerated from August 19 to August 27, 2013, because his parole officer found illegal drugs in his home. The parole officer also reported that Ignacio was not participating in reunification services and had tested positive for drugs three times.

5

On October 24, 2013, Ignacio was arrested for flash incarceration, possession of a controlled substance for sale, possession of a narcotic controlled substance, possession of burglary tools, possession of unlawful paraphernalia, first degree attempted murder, two counts of evading police/disregard of safety, felon in possession of a firearm, possession of ammunition by a person prohibited from owning a firearm, and receiving stolen property. The attempted murder charge was based on Ignacio's allegedly shooting and seriously wounding a San Diego police officer while trying to evade arrest on two felony warrants.

In August 2013, Sandra separated from Ignacio after she found out she was pregnant with his second child. She told the Agency social worker she was thinking of making it a permanent separation but changed her mind after Ignacio's arrest in October. She said she "would not let him rot in prison" and that she visited him in jail as much as she could. She appeared depressed and expressed doubt that she would be able to handle Logan and a new baby or succeed in reunifying with Logan. She started individual therapy and her therapist reported that Sandra was hearing voices and might have depression with psychotic features. The therapist thought Sandra needed medication for depression, but Sandra refused to take medication because of her pregnancy. The therapist was concerned that Sandra's depression would prevent her from completing her reunification services and recommended she undergo a psychiatric and psychological evaluation.

Sandra underwent a court-ordered psychological evaluation in November 2013. When asked why she trafficked narcotics, Sandra told the evaluator, "I had a new baby,

6

my husband was in prison, I couldn't make the bills, it was a quick way to make a lot of money." She told the evaluator she had used cannabis daily between the ages of 12 and 19, but had been abstinent since her arrest in October 2012. The evaluator reported that Sandra met the criteria for major depressive disorder and was debilitated by emotional and cognitive symptoms. The evaluator concluded that Sandra did not appear to have any cognitive or intellectual impairment that would prevent her from benefitting from services, but it was unlikely she would meet expected goals by the "legal deadline of December 18, 2013" because her emotional and psychological functioning had been impeded by symptoms of severe depression and exacerbated by symptoms of pregnancy.

An addendum report filed in February 2014 noted that Sandra's therapist stated Sandra would not have any involvement with Ignacio if the Agency would tell her she could not be with him. The social worker stated "the Agency could not tell [Sandra] who [she could] be in a relationship with, but that is something she would have to decide herself with the help of her services, including individual therapy." When the social worker asked Sandra about her relationship with Ignacio, she said "he is still a person and he just made a bad mistake." She continued to visit him and said he was supportive of her and that they were in the process of agreeing on a name for their unborn daughter.

Because she had poor attendance and was not making progress at ParentCare, Sandra was referred to a different outpatient program at Family Harmony West Women's Recovery Center (Harmony West). Sandra's case manager at Harmony West told the social worker that Sandra was sometimes engaged in sessions and sometimes "just sits there . . . and has a flat affect . . . ."

7

At the contested 12-month review hearing on February 14 and 18, 2014, the court admitted all of the Agency's reports and an update letter from Harmony West into evidence and heard testimony from the social worker, Sandra's therapist, and Sandra. After considering the evidence and arguments of counsel, the court found the Agency had provided the parents with reasonable services. The court further found return of Logan to parental custody would create a substantial risk of detriment to Logan and there was no substantial probability of his return to parental custody by the 18-month date.[4] Accordingly, the court terminated reunification services and set a section 366.26 selection and implementation hearing.

Sandra filed a petition for review of the court's orders and requested a stay of the section 366.26 hearing. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.) This court issued an order to show cause, the Agency responded, and the parties waived oral argument.

## DISCUSSION

### I. *Termination of Reunification Services*

Sandra contends the court erred by not continuing her reunification services to the 18-month date. We construe her argument as a challenge to the sufficiency of the

---

[4]     The court calculated the 18-month date to be "on or about the weekend of April 26, 2014."

8

evidence to support the court's finding that there was no substantial probability that Logan would be returned to her by the 18-month date.[5]

Under section 366.21, subdivision (g)(1), the court may continue a case to the 18-month date only if there is a substantial probability the child will be returned to the parent's physical custody and safely maintained in the home by that time. In considering whether to extend the case to the 18-month date, the court must find: (1) the parent has consistently and regularly contacted and visited the child; (2) the parent has made significant progress in resolving problems that led to the child's removal from parental custody; and (3) the parent has shown "the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1)(A), (B) & (C).)

Where, as here, the court is required to make factual findings, we review its decision for substantial evidence. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 689-690; *In re B.D.* (2008) 159 Cal.App.4th 1218, 1232.) We do not consider the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if there is substantial evidence supporting a contrary finding. (*In re Baby Boy L.* (1994) 24

---

[5] Sandra does not address the applicable standard of review. She argues there is sufficient evidence to support a finding of a substantial probability that Logan would be returned to her custody by the 18-month date, but does not contend there is no substantial evidence to support the court's finding to the contrary.

Cal.App.4th 596, 610; *Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1346.) On appeal, the parent has the burden of showing there is no evidence of a sufficiently substantial nature to support the court's finding or order. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Although the court at the 12-month review hearing found that Sandra had made some progress with parts of her case plan, it found, under section 366.21, subdivision (g), that she had not shown the capacity and ability to complete the objectives of her treatment plan and to provide for Logan's safety, protection, physical and emotional well-being and special needs before the 18-month date, which the court noted was approximately nine weeks away. Accordingly, the court found that return of Logan to Sandra's custody would create a substantial risk of detriment to his physical and emotional well-being. We conclude substantial evidence supports the court's findings.

The objectives of Sandra's initial case plan included her staying free from illegal drugs, not breaking the law and avoiding arrests and convictions, and showing knowledge of age appropriate behavior for Logan. The case plan required her to address in therapy "her self[-]esteem and poor decision making that placed her child at risk." The plan also required her to educate herself on the dangers of drug use and trafficking and the risks they posed to her child, and how they affected her and her family. Her updated case plan required her to address in therapy her understanding of what brought this case to the court's attention and to describe in detail the risk of harm from trafficking drugs in the presence of Logan.

Thus, Sandra's relationship with Ignacio was central to her case plan, the main goal of which was for her to understand how the drug trafficking and smuggling she had engaged in *at Ignacio's request* put Logan at risk and prevented her from being able to properly care for him. Substantial evidence supports the court's finding that Sandra had not sufficiently met that goal. It is clear from the record that Sandra's criminal record was solely the result of her relationship with Ignacio. As the court noted in its oral ruling at the 12-month hearing, "from the very beginning and from the very language of the amended petition in this case, it is quite clear that [Sandra] did not traffic alone in terms of drugs, that she was persuaded—even while being on probation and even after having . . . recently given birth to a child, she was persuaded to once again engage in drug trafficking [by] her husband. And so there was a significant amount of risk-taking that [Sandra] has engaged in after her first involvement in being arrested that [Sandra] is not addressing and that she has not articulated and has not been addressed." The court viewed Sandra as being susceptible to and at great risk of engaging in further criminal activity with Ignacio, noting she had "already done it twice" and continued to "go back to the person with whom she was criminally involved."

The court based its determination that Sandra had not addressed how her decision-making was influenced by Ignacio "in large measure on [its] observing her on the stand and listening carefully to her testimony." The court noted Sandra "was very careful and guarded in answering some questions particularly with respect to visitation and the child with [Ignacio] while he's incarcerated and as well with respect to the underlying facts that brought this case before the court. And so although she may have been hampered in the

11

past by depression, I do find that [she] . . . [has] the intellectual capacity to appreciate the significance and the connection between her relationship with [Ignacio] and continuing ongoing criminal activity." The court later added: "[Sandra] has still not figured out her role with respect to [Ignacio], and in large measure, I base this on my personal observations of [Sandra's] testimony. There was a clear change in her demeanor. She was far more guarded and far more[,] I think[,] protective of [Ignacio] and less willing to disclose when it came to issues involving [Ignacio] and her relationship with him. And I do not find that nine weeks based on this record is sufficient time even if [Sandra] were to focus exclusively on that and no other issue in her life . . . ." It is well settled that we must defer to the trial court's factual findings that are based on its assessment of live testimony because " '[w]e review a cold record and, unlike a trial court, have no opportunity to observe the appearance and demeanor of the witnesses.' " (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1427; *In re S.A.* (2010) 182 Cal.App.4th 1128, 1140 [issues of fact and credibility are questions for the trial court].)

Other evidence in the record apart from Sandra's live testimony supports the court's finding of a great risk that Sandra would engage in future criminal activity with Ignacio. Sandra admitted to an Agency social worker and her psychological evaluator that she trafficked illegal drugs because she had a new baby, her husband was in prison, she was having trouble paying bills, and trafficking drugs "was a quick way to make a lot of money." As the Agency points out, the same circumstances existed at the time of the 12-month hearing—i.e., Sandra had a new baby on the way, she was unemployed, and Ignacio was incarcerated and likely to remain so for many years.

12

Further, Sandra's therapist, Estela Bobadilla, testified that she had no knowledge of Ignacio's criminal history. Noting that Sandra had been in treatment with Bobadilla for seven months, the court reasonably inferred that "during that time, [Sandra had] not disclosed some significant issues with respect to herself, and it appears actually that [Sandra] steers the issues away from [Ignacio] . . . ." In August 2013 when Ignacio was incarcerated for parole violations, Sandra told the social worker he was unavailable for a scheduled visit with Logan because he was in the hospital with internal bleeding and needed to undergo a procedure. Ignacio's parole officer informed the social worker that Ignacio was actually in jail. The evidence that Sandra was not forthcoming with her personal therapist about Ignacio's criminal history and lied to the Agency about his whereabouts to avoid disclosing his incarceration further supports the court's finding that returning Logan to her custody would create a risk of detriment to him—specifically, a risk that she would engage in further criminal activity as a result of her relationship with Ignacio. Substantial evidence supports the court's finding that there was no substantial probability Logan would be returned to her by the 18-month date.

## II. *Sufficiency of Reunification Services*

Sandra contends the court should have continued reunification services to the 18-month date because, in her words, "[a]ny finding that [she] failed to make progress in resolving the reasons for removal is due to the Agency failing to provide reasonable services[.]" She argues that her services were deficient because her case plan did not put her on notice that she needed to address codependency, healthy relationships, or risk-taking behavior, or that she should have no contact with Ignacio.

13

"The adequacy of reunification plans and the reasonableness of [the Agency's] efforts are judged according to the circumstances of each case." (*Amanda H. v. Superior Court*, *supra*, 166 Cal.App.4th at p. 1345.) The Agency "must make a good faith effort to develop and implement a family reunification plan. [Citation.] ' "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' " (*Ibid.*) The court's finding that reasonable reunification services were offered or provided to a parent is reviewed for substantial evidence. (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1010.)

We conclude substantial evidence supports the court's finding that the Agency provided Sandra reasonable services. This dependency case arose entirely from Sandra's trafficking illegal drugs at Ignacio's direction in an effort to get the drugs to him in prison while she was already on probation for attempting to smuggle heroin to him in jail through the mail. The court observed that the petition itself gave adequate notice that Sandra's involvement with crime was an issue and Ignacio "was a factor in all of that." Thus, Sandra's relationship with Ignacio led directly to Logan's removal and is at the core of her reunification plan.

As noted, Sandra's case plan included not breaking the law and avoiding arrests and convictions, and showing knowledge of age appropriate behavior for Logan, and required her to address in therapy her "poor decision making that placed her child at risk." A principal goal of her services was for her to become educated on the dangers of

drug use and trafficking and the risks they posed to her child, and how they affected her and her family. Sandra's updated case plan required her to address in group therapy her understanding of how this case originated and to describe in detail the risk of harm to Logan from trafficking drugs in his presence. She was directed to explain in writing how selling drugs from her home could harm Logan "and exactly how things [would] be different in the future so this does not happen again." Based on these features of her case plan, the court reasonably found that "at the beginning of this case there was sufficient notice to [Sandra] that . . . [her] relationship with [Ignacio] . . . was something that would need to be addressed."

The court reasonably rejected Sandra's argument that Bobadilla could have addressed the issue of Ignacio's power and control over Sandra in therapy, but did not do so because she was not informed it was an issue Sandra needed to address. The court stated it would "never tolerate a bait and switch with parents[,]" and found that the case plan and other materials provided to Bobadilla, as well as Bobadilla's access to the social worker, gave her "some indication that [Sandra's relationship with Ignacio] was significant." The court stated: "The record clearly indicates that [Ignacio's] connection to [Sandra's] risk-taking behavior and involvement in drug trafficking was known all along. And it's clear from reviewing the reports that [Ignacio] is a topic of conversation [between Sandra and Bobadilla], and, in fact, [Bobadilla's] very last treatment plan update refers to [Sandra] considering divorcing him, and they must have discussed that he was in jail and that he will be incarcerated for a long period of time. So the suggestion that this was somehow a surprise and that [Sandra's] relationship with [Ignacio] had to be

15

evaluated, to me, quite frankly, is stunning and not supported by the evidence." The court concluded there was "nothing in [the] record that would suggest that [Sandra] was denied reasonable services through Ms. Bobadilla . . . ."

The court's essential finding that Bobadilla knew or should have known that Sandra's relationship with Ignacio was an issue to be addressed in therapy is supported by the evidence that Bobadilla told the social worker Sandra would not have any involvement with Ignacio if the Agency would tell her she could not be with him, along with the fact that Sandra's involvement in drug trafficking was a direct result of her relationship with Ignacio and central to this case from the beginning. The court reasonably found that Sandra's case plan provided adequate notice that she needed to address her relationship with Ignacio to reunify with Logan, and that her relationship with Ignacio was an issue that either was or should have been addressed in her therapy with Bobadilla.

Sandra suggests that she was denied reasonable services because the Agency did not provide Bobadilla with a copy of her court-ordered psychological evaluation. The evaluation report is dated December 13, 2013, but Bobadilla did not receive the report until Sandra's counsel provided her a copy on January 22, 2014. The court found this delay did not prejudice Sandra, based on Bobadilla's testimony that nothing would have been different if she had received the report earlier because the evaluation essentially

16

confirmed her impressions of the case and that Sandra's therapy was "on the right path."[6] Bobadilla's testimony sufficiently supports the court's finding of no prejudice. Further, as the Agency points out, the evaluation report was attached to the Agency's December 18, 2013 addendum report, and Sandra and her counsel were in court on that date and had access to the report. Thus, Sandra could have discussed the report with Bobadilla before Bobadilla received it in January 2014. The evidence sufficiently supports the court's finding that the Agency provided Sandra reasonable services.

DISPOSITION

The petition is denied. The request for stay is denied.

_____

BENKE, Acting P. J.

WE CONCUR:

_____

McINTYRE, J.

_____

IRION, J.

---

[6]   Bobadilla testified that obtaining Sandra's psychological evaluation earlier would have "verified that [we were] on the right path," and would not have caused her to add anything to Sandra's treatment plan.