Filed 10/17/23  In re Benjamin R. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re BENJAMIN R. et al., Persons Coming Under the Juvenile Court Law. | B318296 c/w B325091 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. Nos. 21CCJP04424A-B |
| Plaintiff and Respondent, | |
| v. | |
| ROSA R., | |
| Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge.  Affirmed, and remanded with directions.

Vincent Uberti, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawn R. Harrison,  County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

In this consolidated appeal, mother challenges the adequacy of the sustained petition allegation to support the juvenile court's jurisdiction under Welfare and Institutions Code section 300, subdivision (b)(1).[1]  Mother also contends that the court's October 4, 2022 finding of reasonable services at a contested review hearing under section 366.21, subdivisions (e) and (f), was not supported by substantial evidence because the Los Angeles County Department of Children and Family Services (Department) did not implement conjoint counseling or propose therapeutic visits when her children refused visits.  Finally, mother contends it was error for the court to find that the Department had complied with its obligations under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (Welf. & Inst. Code, § 224 et seq.).  We affirm the jurisdiction order and the reasonable services finding, but remand the matter for the juvenile court to ensure that the Department carries out its inquiry obligations under ICWA and related statutes.

## BACKGROUND[2]

The parties are familiar with the facts and our opinion does not meet the criteria for publication.  (Cal. Rules of Court, rule 8.1105(c).)  We accordingly resolve the cause before us, consistent

[1] Further statutory references are to the Welfare and Institutions Code.

[2] We "review the record in the light most favorable to the court's determinations."  (*In re M.R.* (2017) 8 Cal.App.5th 101, 108.)

with constitutional requirements, via a written opinion with reasons stated.  (Cal. Const., art. VI, § 14; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1261–1264 [discussion of issue on appeal need not discuss every fact or legal authority raised by parties].)

As relevant here, mother and father[3] have two children: the older child was born in January 2008 and the younger child was born in October 2010.  At an adjudication hearing on December 1, 2021, the court sustained the following amended language for a count under section 300, subdivision (b)(1), based on mother's mental health:  "[Mother] has mental and emotional problems including a diagnosis of depression, which renders the mother incapable of providing the children with regular care and supervision.  The mother has a history of [] a diagnosis of Depression.  In 2018, [Mother] felt depressed and anxious.  On one occasion, [mother] seeked [*sic*] medical care . . . and the doctor prescribed her Ativan medication.  The mother continually displays behavior that would indicate unresolved mental health instability."  Mother appealed.

At a contested combined six and twelve-month review hearing on October 6, 2022, the court found that the Department had provided reasonable services, and ordered the Department to continue providing reunification services until the eighteen-month review hearing.  Mother appealed.

On January 30, 2023, this court ordered mother's two appeals consolidated.

---

[3] Father is not a party to this appeal.

3

## DISCUSSION

## A. <u>Sufficiency of the Petition Allegation</u>

Rather than challenging the sufficiency of the evidence supporting the court's assertion of jurisdiction, mother contends the language of the sustained count is insufficient to support jurisdiction under section 300, subdivision (b)(1), because the count does not allege mother's mental health problems placed the children at risk of serious harm.  The Department responds mother has forfeited this argument because she did not raise her challenge through a demurrer in the juvenile court proceedings.  Mother argues in her reply brief that she adequately challenged the sufficiency of the allegations when she argued that the Department had not met its burden to show a nexus between her mental and emotional problems and the children's well-being.

As the Department points out, the courts of appeal are divided on whether a parent waives the right to challenge the sufficiency of a dependency petition's allegations on appeal after failing to raise the issue by demurrer.  (See *In re James C.* (2002) 104 Cal.App.4th 470, 480.)  Courts in the Second Appellate District, however, have consistently held that where a parent fails to challenge a petition's sufficiency by filing a demurrer or otherwise raising a proper objection in juvenile court, the issue is forfeited on appeal.  (See, e.g., *id.* at p. 481; *In re David H.* (2008) 165 Cal.App.4th 1626, 1640; *In re Christopher C.* (2010) 182 Cal.App.4th 73, 82–83 (*Christopher C.*).)  We follow these cases.

During the adjudication hearing, mother's counsel argued the Department failed to prove the allegations were true, as the Department's evidence did not establish there was a nexus

between mother's mental health issues and a risk of harm to the children.  However, this argument is not the equivalent of filing a demurrer disputing the sufficiency of the petition allegation, or even arguing that the count was deficient as alleged.  Accordingly, mother has forfeited her argument challenging the sufficiency of the sustained petition allegation.  (See *Christopher C., supra*, 182 Cal.App.4th at p. 83.)

## B. <u>The Reasonable Services Finding</u>

Mother contends there was insufficient evidence to support the juvenile court's October 6, 2022 determination that the Department provided reasonable reunification services, because the children were never enrolled in conjoint therapy, and the social worker did not propose therapeutic visits.  The Department challenges mother's standing and whether the issue mother raises is justiciable.  Alternatively, the Department argues there is substantial evidence to support the court's reasonable services determination.

*Applicable Law*

When minors have been detained or removed from parental custody, the juvenile court ordinarily must, at the disposition hearing, "order child welfare services for the minor and the parent for the purpose of facilitating reunification of the family.  (§ 361.5, subd. (a).)" (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843.)  "Such services may, depending on the case, include evaluations and assessments, counseling, parent education, substance abuse treatment and testing, and other

forms of assistance." (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 624 (*Michael G.*) "Reunification services are typically understood as a benefit provided to parents, because services enable them to demonstrate parental fitness and so regain custody of their dependent children." (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228.) Although the court "should be mindful of the burdens their disposition orders impose on parents already grappling with difficult conditions and circumstances," the "paramount concern always must be the child's best interest . . . no matter how burdensome its requirements may seem from the parent's perspective." (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071–1072.)

Under the statutory scheme governing juvenile dependency proceedings, the juvenile court conducts review hearings at six month intervals to evaluate, "among other things, the adequacy of the reunification services offered or provided and the extent of the parent's progress." (*Michael G., supra,* 14 Cal.5th at p. 625.) "[A]t the six- and 12-month status hearings, the court must find that the parent has been provided or offered reasonable reunification services before the court can proceed to set a hearing to decide whether to terminate parental rights and select a permanent plan for the [dependent minors]." (*Id.* at 625.) If the court finds "that reasonable services were *not* provided to the parent, the court extends reunification services for an additional six months rather than proceed to the final stage of dependency proceedings, permanency planning." (*Ibid.*, italics added.) "Services will be found reasonable if the Department has 'identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the

6

service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.]" (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972–973 (*Alvin R.*).)

The Department must show by clear and convincing evidence that reasonable reunification services have been provided. (*In re Monica C.* (1995) 31 Cal.App.4th 296, 306.) We review a finding that reasonable services were provided for substantial evidence, considering the record in the light most favorable to the Department. (*Patricia W. v. Superior Court* (2016) 244 Cal.App.4th 397, 419.) " ' "If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." ' [Citation.]" (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1346 (*Amanda H.*).) However, when the burden of proof at the trial court level is clear and convincing, the substantial evidence standard of review should account for the higher level of certainty demanded by that burden of proof, as compared to facts proven by preponderance of the evidence. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998–1006.)

*Standing and Justiciability*

We disagree with the Department that a parent who receives an additional six months of reunification services at a review hearing lacks standing to challenge the court's reasonable services finding, or that the matter is not justiciable. If we were to conclude that the court's finding lacked evidentiary support, our holding could impact how much additional time mother would be able to receive reunification services before the court

7

could set a permanency planning hearing under section 366.26. (See *Michael G., supra,* 14 Cal.5th at p. 625.)

*Substantial Evidence Supports the Determination*

Mother contends the court's reasonable services finding should be reversed because the Department did not implement conjoint therapy, nor did it attempt to facilitate visitation in a therapeutic setting.

Mother's argument relies on *Alvin R., supra,* 108 Cal.App.4th 962, where the court found insufficient evidence to support a finding of reasonable services, when the social services agency was responsible for significant delays in starting conjoint counseling between father and his child. The father had complied with his case plan, but there were delays in starting individual counseling for the child, initially ordered as a prerequisite to conjoint counseling. Although the juvenile court later lifted the individual counseling requirement, the agency mistakenly believed the child needed eight sessions of individual counseling before starting conjoint sessions with father. (*Id.* at pp. 965–969.)

The circumstances of the current case are fully distinguishable from *Alvin R.* The children started individual therapy sessions in December 2021, even before the February 2022 disposition hearing. The Department provided mother with referrals for services, including a mental health evaluation, but mother's words and actions demonstrated her unwillingness to engage in reunification services. While her children were in individual counseling, mother was not only missing drug tests and denying any need for mental health counseling, but she

8

directed accusations of lying and abuse to the social workers and the children's caregiver, a maternal aunt. At the disposition hearing, even after her children testified they would feel safer if visits were monitored, mother spoke over the court and the attorneys, and said she would rather have the kids sent to foster care than stay with maternal aunt, causing her younger child to cry in court. Then, on the same day that the court ordered monitored visits and conjoint counseling as part of its February 2022 disposition order, mother took actions that caused the children to be even more fearful of mother, physically blocking the children's car from leaving the parking lot, and later chasing them in her car on the freeway. Mother's actions resulted in a suspension of any visits until April of 2022, when mother finally underwent a mental health evaluation. Still, mother only attended therapy appointments once a month, with the exception of July and August of 2022, when she went twice a month.

The adequacy of a reunification plan and the reasonableness of the Department's efforts "are judged according to the circumstances of each case." (*Amanda H., supra,* 166 Cal.App.4th at p. 1345 [social services agency must make good faith effort to create and effectuate reunification plan].) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) Considering the Department's ongoing efforts to encourage the children to discuss matters with their therapist, and the fact that mother's own words and actions played a significant role in delaying the start of either conjoint counseling or therapeutic visits, we conclude there was

9

substantial evidence to support the court's reasonable services determination.

## C. ICWA

*ICWA Facts*

Both mother and father filed Judicial Council ICWA-020 forms denying any knowledge of possible Indian ancestry, and the court found no reason to know that minors were Indian children. However, neither the court nor the Department asked the minors' two identified maternal aunts (one of whom was the children's caregiver and was present at multiple court hearings) about possible Indian ancestry. In addition, the Department spoke with one paternal aunt, but never asked her or any other available paternal relatives about possible Indian ancestry.

*ICWA Analysis*

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Both ICWA and California law define an " 'Indian child' " as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.

(25 U.S.C. § 1903(4); § 224.1, subds. (a) & (b); see *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783.)

California statutory law incorporates the requirements of ICWA, and imposes some additional requirements as well. (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741–742 (*Benjamin M.*).) State and federal law require the court to ask parties and participants at the outset of an involuntary child custody proceeding whether they have reason to know a minor is an Indian child, and to "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R. § 23.107(a); § 224.2, subd. (c); see *Benjamin M.*, at p. 741.) Initial inquiry also includes requiring each party to complete the parental notification of Indian status (ICWA-020) form. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

State law imposes on the Department a first-step inquiry duty to "interview, among others, extended family members and others who had an interest in the child." (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; see § 224.2, subd. (b).) Federal regulations explain that the term "[e]xtended family member is defined by the law or custom of the Indian child's Tribe or, in the absence of such law or custom, is a person who has reached age 18 and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 C.F.R. § 23.2 (2017).) When there is "reason to believe that an Indian child is involved in a proceeding," further inquiry is also required. (§ 224.2, subd. (e); *In re T.G.* (2020) 58 Cal.App.5th 275, 290, fn. 14.) "We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence." (*In re H.V.*, at p. 438.)

11

The Department concedes on appeal that the juvenile court's ICWA determination must be reversed because the initial inquiry requirements of ICWA and related state law were not met in this case. Because the dependency case is ongoing, and mother's appeal is not from an order terminating parental rights, the Department asks us to remand with directions for the court and the Department to comply with ICWA. (*In re H.V., supra*, 75 Cal.App.5th at p. 438.)

We agree that the court erred in finding ICWA inapplicable. The court did not ask the maternal aunt, who was the children's caregiver and appeared at several dependency hearings, whether she knew of any Indian ancestry. (*Benjamin M., supra*, 70 Cal.App.5th at p. 741 [court must ask each participant in child custody proceeding].) In addition, there is no evidence that the Department asked other available extended family members about the possibility that minors have Indian ancestry. (See, e.g., *In re H.V., supra*, 75 Cal.App.5th at p. 438 [prejudicial error when Department fails to discharge its first step duty of inquiry].)

## DISPOSITION

The December 1, 2021 jurisdiction order and the October 4, 2022 reasonable services finding are affirmed. On remand, the court shall order the Department to make reasonable efforts to interview available extended relatives, including minors' maternal aunts and a paternal aunt, about the possibility of minors' Indian ancestry and to report on the results of the Department's investigation. Nothing in this disposition precludes the court from ordering additional inquiry of others

12

having an interest in the children.  Based on the information reported, the court shall determine whether additional inquiry or notice to tribes is necessary.  If additional inquiry or notice is warranted, the court shall make all necessary orders to ensure compliance with ICWA and related California law.

NOT TO BE PUBLISHED.


MOOR, J.


I concur:


KIM, J.


13

In re Benjamin R.
B318296


BAKER, Acting P. J., Concurring in Part and Dissenting in Part


I join the majority's holdings resolving Rosa R.'s challenges to the juvenile court's jurisdiction and reasonable services findings. I respectfully dissent, however, from the majority's decision to reverse (or is it a remand without reversal?) the juvenile court's Indian Child Welfare Act (ICWA) "determination" and to remand the cause. Insofar as the ICWA issue is not moot (see *In re Baby Girl M.* (2022) 83 Cal.App.5th 635), the court's determination in the proceedings thus far is supported by substantial evidence (*In re A.C.* (2022) 86 Cal.App.5th 130, 132 (dis. opn. of Baker, J.); *In re Ezequiel G.* (2022) 81 Cal.App.5th 984; *In re H.V.* (2022) 75 Cal.App.5th 433, 439 (dis. opn. of Baker, J.)).


                    BAKER, Acting P. J.